# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF RHODE ISLAND

Docket No. _____ **CA 19 - . 567** *USM*

THE RUMFORD FREE CATHOLIC LIBRARY, ET AL,

[Father Philip M. Stark, S.J.; Peter Francis Tinkham], Plaintiffs.

V.

TOWN OF RUMFORD; OXFORD COUNTY BOARD OF

ASSESSMENT REVIEW; HEBERT REALTY CO., ET AL,

[Thomas Bourret; Linnell Gironda; Richard Coulombe; Brian Mills; Jennifer Kreckel; William H. Dale; Louise Nash; Theodore [Dillweed-de Boisdeffre] Dilworth, III; Laura A. Perry[-Esterhazy]; Alan J. Perry[-Esterhazy]; Jerrod Crockett; Wade Rainey.] Defendants.

*******

NOW COME the Petitioners/Plaintiffs, the Rumford Free Catholic Library et al, and DEMAND A JURY TRIAL to try the following claims against the above-Defendants in their corporate, official, and personal selves:

1

1. Manifold violations, under color of law, of federal statute, 42 U.S.C. Section 2000cc et sequelae.
2. Manifold violations under color of law of the federal civil rights statute, 42 U.S.C. Section 1983, and of the supreme law of the land, the Constitution of the United States, viz., Article IV, and the First, Sixth, and Fourteenth Amendments.
3. Manifold violations, under color of law, of 18 U.S.C., Section 1961 [The Racketeer Influenced and Corrupt Organization Act., viz, CIVIL RICO].
4. Frivolous and malicious use by members of the federal tort bar of the system of public justice to tort a 501 © 3 charity into bankruptcy in violation of every rule of federal civil procedure imaginable.
5. Slander, defamation, and character-assassination of the Plaintiff charity, in se, and of its officers personally.
6. The illicit collusion to deprive the Plaintiff of real estate vital to the furtherance of its charitable mission; the unethical conveyance of real estate to defraud the Plaintiff and to nullify its charitable mission in the Town of Rumford.

## Parties

### The Plaintiffs

7. The Rumford Free Catholic Library is a religious organization and a non-profit, 501©3 charity with its place of business in RI, MA and ME.

2

8. Father Philip M. Stark is a resident of the Commonwealth of Rhode Island.

9. Peter Francis Tinkham is resident of the Commonwealth of Massachusetts.

## The Defendants

10. The Town of Rumford is a body corporate and politic that maintains its principle place of business in Rumford Falls, ME.

11. The Oxford County Board of Assessment Review has its place of business in South Paris, ME.

12. Hebert Realty Co., has its place of business in Mexico ME.

13. Thomas Bourret is a resident of the State of ME.

14. Linnell Gironda is a resident of the State of ME.

15. Richard Coulombe is a resident of the State of ME.

16. Brian MIlls is a resident of the State of ME.

17. Jennifer Kreckel is a resident of the State of ME.

18. William H. Dale is a resident of the State of ME.

19. Louise Nash is a resident of the State of ME

20. Theodore [Dillweed de Boisdeffre] Dilworth, III, is a resident of the State of ME.

21. Alan J. Perry[-Esterhazy] is a resident of the State of ME.

22. Jarrod Crockett is a resident of the State of ME.

23. Wade Rainey is a resident of the State of ME.

24. John Conway is a resident of the State of ME.

3

25.     Laura A. Perry[-Esterhazy], upon information and belief, is a resident of the State of Florida

## Jurisdiction and Venue

26.     This First Amendment Petition for the redress of grievances is brought under, and to enforce, federal statute 42 U.S.C. Section 2000cc et sequelae, [LRUIPA]; under the federal civil rights statute, 42 U.S.C., 1983; and under the Constitution of the United States, viz., Article VI, and the First, Fifth, Sixth, Seventh and Fourteenth Amendments.

27.     Venue is appropriate owing to the diversity of citizenship of all parties, both Plaintiffs and Defendants residing in separate states or Commonwealths.

## Allegations of Fact.

28.      The Rumford Free Catholic Library [hereinafter the RFCL], is a 501 © 3 charity that has established its religious mission in the Towns of Sharon, MA; Rumford, ME; and Cumberland, RI.

29.     In 2012, the RFCL established [in Sharon, MA], an adult Catholic Library, a self-service food pantry, and a retreat house offering one and three-day Ignatian retreats and occasionally Holy Mass, to the public.

4

30.     In 2013, the RFCL employed its federal privilege and immunity and qualified for property tax exemption in the Town of Sharon, MA.  It has enjoyed this immunity for the past seven years uninterrupted and without controversy or scrutiny.

31.     In April of 2014, the RFCL acquired a partially run-down estate in Rumford, ME and immediately, with the time and resources available, began to restore the property and at the same time, established a food pantry service, offered Ignatian retreats, and when possible, Holy Mass.

32.      The RFCL, under the leadership of its president, Plaintiff Father Philip Marion Stark, S.J., also established a prayer and rosary 'hotline' and began to collect and collate thousands of books for the prospective children's Catholic library it intended to create when time and resources permitted.

33.     In June 2014, the RFCL applied to exercise its right to property tax exemption, hand-delivering an envelope of requested documents and a personal letter from Plaintiff Fr. Stark, introducing the RFCL to the Town and offering to schedule an appointment to meet personally, [he had a full time religious commitment in MA],  with Town officials during his vacation week in September, 2014.

34.     Neither the RFCL nor its principle officers had any
        idea that its religious and charitable mission as well as the
        two founding members of the charity had been the subject
        of a campaign of vicious and false slander and was, in the
        eyes of the Town officials, to whom the application for
        exemption was directed, thoroughly discredited.

35.     Evidence gathered much later on in this drama
        indicated conclusively that the defamation originated with
        the RFCL's former attorney who had aided it in
        incorporation in 2008, and who, in 2014, had been
        appointed the Town Attorney.

36.     The Town of Rumford subsequently at a later date,
        falsely denied receiving the hand-delivered exemption
        application.

37.     In February of 2015, assuming it enjoyed the privilege
        and immunity of property tax exemption, having no word
        of denial by the Town of Rumford, and no property tax bill
        for the year 2014, the RFCL inquired by certified letter if
        the Town of Rumford required yearly application for
        exemption.

38.     Not receiving a reply from Defendant Linnell Gironda,
        the agent for the Rumford Board of Assessors, the RFCL,

out of an abundance of caution, submitted a second application for exemption via certified mail.

39.    The Town of Rumford did not acknowledge receipt of this submission and subsequently at a later date, falsely denied receiving same.

40.    In September 2015, the RFCL received a written threat from the Rumford tax collector, Defendant Thomas Bourret, sent to its RI office via ordinary U.S. mail. Defendant Bourret threatened to sell, within thirty days, the Rumford property out from under the RFCL for non-payment of two years taxes.

41.    Note well.  The RFCL has NEVER received a tax bill from Defendant Bourret during the six years it has been actively carrying out its religious and charitable mission in Rumford.

42.    In October 2015, the RFCL paid the outstanding tax bill in full plus penalties, filed suit through its new attorney, Defendant John Conway, in the ME superior court in South Paris, ME, for a court review of the applicable ME law on non-profit exemption, court confirmation of its charitable status, and a court order for the  recovery of the property  tax money paid with interest and attorney fees.

43.     In February of 2016, the RFCL's attorney Defendant Conway filed the charity's third application for tax exemption with the Town of Rumford owing to the stout denial by the Town it had received either of the first two.

44.     In January 2017, the superior court in South Paris, ME ruled in the RFCL's favor and confirmed its bona fide non-profit, 501©3 status.

45.     The superior court judge also opined that ME law provides that no use of a charitable property is necessary for the first few years of ownership to qualify for tax exemption.

46.      The court, accordingly, ordered the Town of Rumford to remit the paid taxes to the RFCL with interest, directing it to issue no further property tax bills unless it could be determined that the property was not being used for any purpose going forward.

47.     The Town of Rumford refused to pay the court-ordered reimbursement of taxes to the RFCL,  although it is not clear if the charity's attorney, Defendant John Conway, who, late in the case, displayed unmistakable signs of being afflicted with alcoholism and who apparently never did a moment of productive due diligence on the RFCL's behalf, requested reimbursement.

48.     Eighteen months later, in April of 2018, Defendant John Conway instead submitted a request for abatement of back taxes to the Town of Rumford.

49.     The Rumford Board of Selectmen, which summarily denied this request in May 2018, after a hearing neither Defendant Conway nor principles from the RFCL attended, concluded that there was no use whatsoever made of the Rumford property by the RFCL since it took ownership in the spring of 2014; no evidence of religious or charitable mission activity at any time; and that, in addition, the property was run-down and derelict, unsuitable for any use.

50.     The RFCL's attorney, Defendant Conway thereafter appealed the Town's denial of the abatement to the Oxford County Board of Assessment Review, in South Paris, ME.

51.     The Board of Assessment Review granted, in August 2018, the RFCL's request for the abatement and return of paid property tax for the years 2014, and 2015, plus penalties and interest.

52.     Instead of complying with this re-iteration of the court order, the Town of Rumford through its attorney, Defendant William H. Dale, promptly appealed the Board

of Assessment Review's decision back to the superior court in South Paris, ME.

53.     At the superior court hearing, before a different judge, unfamiliar with the previous judge's rulings, the Defendant town employees, Gironda, Coulombe, and Mills, perjured themselves asserting that the RFCL had never used the Rumford property for any reason whatsoever at any time, had no charitable mission, and again falsely identified the property as "unusable" and derelict.

54.     The RFCL's attorney Defendant John Conway, having done no due diligence despite the RFCL's offer to provide testimony, photographs and other material, was incompetent to rebut these false claims.

55.     A successful rebuttal that could have been easily accomplished by merely presenting the existing and overwhelming evidence of use AND religious and charitable mission on the RFCL's behalf.

56.     To say nothing of the color photos of the restored condition of both the landscaping and the exterior and interior of the retreat house that had been made for insurance purposes in 2015.

57.     Accordingly, the deliberately mis-informed court in January 2019, remanded the issue back to the Board of Assessment Review for a determination that the property was or was not in use during the years 2014, 2015.

58.     The RFCL's attorney Defendant John Conway arrived at the Board of Assessment Review's second 2019, hearing, red-faced, inebriated and completely unfamiliar with the RFCL's personally compiled and voluminous submission of evidence to be presented at the hearing.

59.     Since Defendant John Conway arrogantly informed the RFCL not to send Defendant Dale a copy, that he had to review the submission first, the Town's copy was not received until 48 hours, instead of the required ten days, before the hearing.

60.     After the hearing convened, Defendant Dale motioned for a postponement claiming he did not have enough time to leaf through the RFCL's overwhelming proof of use and religious and charitable mission.

61.     The Board of Assessment Review postponed the hearing.

62.     This action was taken unanimously despite the fact that the Board, having its own copy of the submission for

over a month, was perfectly aware of the quality of the RFCL's overwhelming evidence of use.

63.     The Board members were also aware that the reason for the postponement was the inappropriateness of the perjured testimony that Defendant Dale had intended to suborn from the four Defendant town employees, since the mantra of 'non-use' was the only constituent part of the Town of Rumford's defense.

64.     The Board of Assessment Review summarily refused to consider the objection made at the hearing by the RFCL's officer who stated that she had travelled to South Paris, ME from North Carolina and that two other officers would arrive shortly having travelled from Massachusetts, and Rhode Island to explain the submission and to answer any questions by the Board.

65.     The RFCL's submission contained overwhelming evidence of the religious and charitable use of the property to further its mission.  Viz.,   proof [by lists of names and addresses of the dozens of pantry patrons served, and receipts of food purchased or donated], of the operation of the ME food pantry during 2014, 2015, 2016, and 2017; color photos of the container garden on site that replaced the pantry service when the Town of Rumford shut it down in 2017;  photos of the thousands of

books collected for the prospective children's Catholic library.

66.     This submission also included yearly lists of hundreds of cancelled RFCL checks for utilities – heat, electricity, water, gas, telephone, internet – for the six months of each year that the RFCL operated at the Rumford site from 2014, to 2018; RFCL checks written for local supplies; and the  RFCL's five yearly reports to the MA Attorney General's office which also detailed the nature of the religious and charitable mission in Rumford, the numbers of people served by the pantry and at the Catholic retreats and by the information, prayer and rosary "hot line".

67.     The voluminous submission also included the certified receipts for the mailing of two property tax exemption applications in 2015, and 2016, together with the certified correspondence between co-Plaintiff Father Philp M. Stark, the President of the RFCL, and Defendant Linnell Gironda, the agent for the Rumford Board of Assessors.

68.     These documents and certified receipts exposed the Town of Rumford's repeated lies that it had never received a single application.

69.      Also included were RFCL 2014, 2015, press releases, notices and  announcements in the local Rumford paper;

color pictures of the property, demonstrating diligent upkeep of the landscaping and detailing the restored exterior and the interior order of the retreat house; photos of the RFCL's MA adult library in a beautifully-converted garage, and the self-service pantry and retreat house located beside it.

70.    The RFCL's original and still prospective plan was to duplicate the MA self-service pantry and [children's] library on the RFCL's Rumford property, when time and resources permitted.

71.    At the end of the postponed second hearing, and despite the overwhelming evidence of use, the Board of Assessment Review orally denied the RFCL's request for abatement because it had "never applied for an exemption of property tax".

72.    The next day, in a letter dated July 12, 2019, Board chairman, Defendant Wade Rainey, changed the rationale for denial to "the lack of use of the property in 2014 and 2015, its derelict condition and other limiting and non-existent details and in a manner that did not engender confidence that any Board member had even looked at the RFCL's submission.

73.     This deliberately uninformed and wholly unjust and biased conclusion was partly owing to the fact that there was no oral rebuttal of the Town's position at the re-scheduled hearing.   Long-standing previous commitments, the time and distance, plus the sudden grave illness of the one RFCL officer who was supposed to be there, resulted in no RFCL officer present at the re-scheduled hearing.

74.     In addition, Attorney Defendant John Conway obviously chagrined by his incompetent representation of the RFCL, witnessed for the first time at the first, postponed hearing by an RFCL officer who was capable of putting two and two together,  withdrew his paid and paid up-to-date representation [$10,000.00], without warning, without the RFCL's consent, and damaging the RFCL's position before the Board.

75.     Indeed, Plaintiff Father Stark adamantly opposed Defendant Conway's precipitous withdrawal on the eve of the rehearing and Plaintiff Tinkham threatened to report this betrayal of his client to the Maine Board of Overseers of the Bar.

76.     At the re-scheduled hearing, the Town employees, Defendants Gironda, Coulombe, and Mills, diligently perjured themselves once again repeating the same

falsehood, under oath, that the RFCL made no use of the Rumford property whatsoever from 2014, to 2019.

77.      The replacement attorney, Shane Wright, Esquire, retained last minute by Plaintiff Father Stark to stand in for the withdrawn Defendant Conway, during the re-scheduled hearing, proved to be inadequate [at a cost of $5000.00] to the simple task of presenting the RFCL's admittedly voluminous submission which had been duly organized for the incompetent Defendant Conway.

78.      At the re-scheduled hearing, according to Attorney Wright, the Town employees, Defendants Gironda, Coulombe, and Mills, diligently lied under oath again, once it was obvious to Defendant Dale that no one was present from the RFCL to rebut the perjured testimony.

79.      Each Defendant town employee repeated the same falsehoods under oath that the RFCL made no use of the Rumford property, WHATSOEVER, from 2014, to 2019.

80.      The Board of Assessment Review's cold and biased treatment of Attorney Wright,  as well as Defendant Rainey's confused and erratic oral and written conclusions after the hearing, clearly evidenced the poisoning by the same malicious and false defamation of the RFCL and its

officers which had been bruited about the Town of Rumford as early as 2012 and noted above in pp. 34.

81.     In his July 12, 2019, letter, board chairman Defendant Wade Rainey demonstrated that he and the other members of the Board had been deeply prejudiced against the RFCL before the Town's employees opened their mouths at the hearing but were deeply confused how to camouflage this bias.

82.     This is how the campaign to slander and defame the RFCL, its principle officers, its two founders and its religious and charitable mission came about:

a.   Defendants Alan J. Perry[-Esterhazy] and Theodore [Dillweed de Boisdeffre] Dilworth, III, who were sued by their former client, co-Plaintiff Tinkham, in 2012, for extortion and betrayal of fiduciary trust, motioned the federal court in their retaliatory SLAPP SUIT to attach the RFCL's Rumford property in satisfaction what they hoped to be a judgement in their favor.

b.   The brutal and false character assassination of co-Plaintiff Tinkham was the main focus of these malefactors' defense.  Thus, the repeated visits to Rumford to defame their former client, co-Plaintiff Tinkham and the RFCL he founded with his wife in 2008.

c. The campaign of vicious slander and defamation was intended to assist these malefactors in laying the groundwork among the relevant Town of Rumford officials for the successful attachment of the RFCL property, alleging unlawful conveyance - after they won their SLAPP SUIT against Plaintiff Tinkham.*

68.  In order to queer the Town of Rumford as to the merits of the RFCL's ownership of the property, this stellar duo duly poisoned the aforementioned credulous Defendant Jennifer Kreckel – who handled the RFCL's incorporation in 2008 – with the most iniquitous slander and false character assassination of the RFCL in se and co-Plaintiff Peter Tinkham in person.

69. Defendant Kreckel, also the Rumford town attorney, then dutifully poisoned her fellow town employees, Defendants Bourret, Gironda, Coulombe, Mills, and Dale.  The wave of defamation eventually reaching the Board of Selectmen and the elderly realtor, Defendant Louise Nash.

---

* This federal case is presently docketed in the U.S. supreme Court [Docket No. 19-5533] for a writ of certiorari with the Perry[-Esterhazy] / [ Dillweed de Boisdeffre] Dilworth, III, vicious, false and concocted defamation at the center of the petition.

70.    Defendant Louise Nash possessed a prior hidden but longstanding personal animus towards the RFCL, being entirely motivated to swallow whole the obscene defamation bruited about by her colleague in real estate matters, viz., Rumford nazi code enforcement officer Defendant Coulombe.

71.    Defendant Coulombe was informed by affidavit submitted to the Board of Assessment Review and to the Defendant town employees – one month prior to the first 2019, scheduled hearing - that the RFCL would purchase other property in Rumford to establish a larger community garden in Rumford.

69.    This affidavit was written a year-and-a-half AFTER the Town of Rumford employee, Defendant Coulombe, in the name of the Town of Rumford, ordered the RFCL to cease and desist its charitable pantry service, its plans for a children's Catholic library, and its use of the retreat house for religious and charitable purposes  unless and until a change-of-use was established.

70.    The RFCL which had no intention of caving in to the arbitrary, nazi demands of Defendant Coulombe and paying the swingeing costs of a change-of-use for the property in order to build some shelves in a garage so that Rumford's children would be exposed to wholesome

Catholic books, decided to continue its charitable mission BY OTHER MEANS.

71.    The RFCL, forbidden to give away packaged food ON its premises, would utilize the property to PLANT vegetables to be delivered FROM its premises freely to patrons now prevented by order of Defendant Coulombe from setting foot on the RFCL's property to pray the rosary, to participate in a religious retreat or to obtain a weekly box of food.

72.    The whole and entire point of the RFCL's religious mission was to demonstrate the Catholic faith in action and it was, by no means, restricted in that mission to a pantry and library.

73.    After the total success of a vast container garden planted in the summers of 2017, and 2018, the RFCL began to search for acreage to expand from containers to cultivated land in June of 2019.  Curiously, all inquiries to local realtors were unsuccessful until a little subterfuge was instituted.

74.    Accordingly, and yet unaware of the personal animus of Defendant Nash towards the RFCL, the RFCL's clerk visited several sites for the planned community garden with Defendant Nash on the basis of looking for land for a

friend.  However, when viewing one site which was perfect and precisely what was needed, she told Defendant Nash privately that it was really for a community garden operated by RFCL.

75.    Although Defendant Nash appeared reluctant to receive this news and began to object that a garden might not be permitted by the Rumford Code Enforcement Officer, the RFCL clerk  immediately produced a thousand dollar deposit on the two acres of agricultural land that had just been shown to her as available for sale.

76.     The RFCL clerk obtained a reluctant and curt verbal agreement from Defendant Nash to her request to hold the property for two weeks to give the RFCL time to produce the full amount of the selling price.

77.    The next day the RFCL put a down-payment on a second-hand tractor and arranged with a contractor to build a small barn and vegetable stand for the use of its pantry patrons the following spring.

78.     After returning to MA to obtain the purchase money and then back to Rumford to close on the property, the RFCL clerk, with a friend and RFCL volunteer from MA, stopped by the acreage to check out the positioning of

the prospective barn.   This was the day the verbally-brokered, two-week period ended.

79.     Before the RFCL officer exited her vehicle, she was quickly approached by a man obviously camped-out on the reserved two acres of land.  This man did not inquire who the RFCL officer was or what she was doing, but simply ran up to her with the news that he had "just closed on the property the day prior and that Louise Nash had taken down the 'for sale' sign."

80.     There were several statements made by Defendant Nash directly to the RFCL clerk during her first visit to view the property that will leave the Jury in no doubt of the collusion between Defendants Nash and Coulombe to prevent the RFCL from owning any more tax-free property in the Town of Rumford.

81.     The horrendous and malicious slander that intensified the pre-existing animus of Defendant Nash, was enthusiastically regurgitated and published throughout the Town's public E-mail system by Defendant town employees, especially Defendant Coulombe as early as 2012.

82.     This vicious activity demonstrates the unshakeable intention the Defendant town employees have to prove that the RFCL is a religious imposter and sham.

83.    Defendant town employees were so thoroughly imbued with the outrageous defamation originating in the malicious, self-serving minds of Defendants Perry [-Esterhazy] and [Dillweed de Boisdeffre] Dilworth, III, they did not even bother to confirm their false opinion and enthusiastically bruited the concocted and false character assassination among themselves and the rest of the town.

84.    This outrageous defamation was diligently circulated among the rest of the town's unenlightened employees and residents for the next four years - destroying the reputation of the RFCL and its officers - as the drama of the property tax exemption collusion to drive the RFCL from the Town of Rumford unfolded.

85.    Act Two of this drama made it all the way to South Paris, ME where Defendant [Dillweed de Boisdeffre] Dilworth, III, poisoned his wife who was the newly-elected Registrar of Probate and Defendant Jarrod Crockett, the newly-elected probate judge with the same outrageous and vicious defamation of the RFCL and its officers.

86.    The probate court and registrar's offices are located cheek-by-jowl with the Oxford County Board of

Assessment Review in the tiny rabbit warren that is the old superior courthouse.

87.    The Registrar of Probate and the Defendant probate judge, specifically employed the defamatory information to humiliate and obstruct a RFCL officer who simply wanted to officially change her name in honor of her deceased father.

88.    When all of the evidence is produced, the Jury will have no problem reasonably associating these three stellar members of the ME bar, Mr and Mrs. [Dillweed de Boisdeffre] Dilworth, III, and probate judge Crockett with promoting the defamatory information and character assassination of the RFCL to the Board of Assessment Review.

89.    Defendant [Dillweed de Boisdeffre] Dilworth, III, actually appeared on the rebuttal witness list of Defendant Dale for the second, exceedingly biased hearing concerning the rebate of paid property tax to the RFCL before that Board although no rationale was given for his testimony.

90.    However, after co-Plaintiff Father Stark warned town attorney Defendant Dale about defaming the RFCL before the Board of Assessment Review, upon information and

belief, Defendant [Dillweed de Boisdeffre] Dilworth, III, was not called.

## CLAIMS

### I    Violation of Article IV of The U.S. Constitution

91.    RFCL incorporates herein the previous allegation of fact.

a. It is unlawful and unreasonable to require, under color of law, an application for property tax exemption, or an arbitrary 'change of use' for a religious charity who enjoys the Article IV privilege and immunity of relief from such oppressive and restrictive requirements in the Commonwealth of Massachusetts.

b. The evidence at trial will demonstrate to the Jury that no other non-profit in the Town of Rumford is required to submit a lengthy application for tax exemption, to re-apply on a yearly basis, or to provide proof of use or mission.

### II    Violation of 42 U.S.C. section 2000 [RLUIPA]

92.    RFCL incorporates herein the previous allegations of fact.

a. RFCL's establishment and operation of a house of retreat and worship as well as their establishment and operation of a religious library and a self-service food

pantry are religious exercise under 42 U.S.C. section 2000cc-5(7).

b. The Town of Rumford's phony five-year controversy replete with contrived falsehoods and viciously circulated and untrue defamation over the RFCL's application for property tax exemption is sufficient and long-standing evidence of their grave religious animus and bias.

c. When added to the Town's infliction of substantial costs upon a religious charity in contesting the phony and unlawful legal controversy and the substantial costs of complying with the change-of-use requirement,  which specifically burdens the RFCL's use of real property for the purpose of religious exercise, the evidence of religious bias by the Town of Rumford, is compelling.

d. The Town of Rumford's requirement of a change-of-use arbitrarily targeting the RFCL as the only religious non-profit on less than equal terms with the five non-religious non-profit organizations in the same residential zone is prohibited by 42 U.S.C. section2000cc (b)(1).

e.  The Town of Rumford's requirement of a change-of use gravely discriminates against the RFCL on the basis of its religious exercise and denomination and is prohibited by 42 U.S.C. section 2000cc (b)(2).

f.  The Town of Rumford's interpretation of this zoning ordinance to totally exclude some religious functions and unreasonably limit others within a jurisdiction is prohibited by 42 U.S.C. section 2000cc (b)(3).

g.  The Town of Rumford's arbitrary individualized assessment of the purposed use for the property involved affects interstate commerce, does not further any compelling government interest and is prohibited by both RLUIPA and Article VI of the Constitution of the United States.

## III   Violation of 42 U.S.C. Section 1983 [1st, 14th Amendments]

99.   RFCL incorporates herein the previous allegations of fact.

a.  The Defendant town employees, acting under color of law, have applied the zoning residential ordinance against the RFCL based on arbitrary and capricious criteria, violating the due process and equal protection rights of the RFCL by denying the RFCL the use of its

property based on irrational and discriminatory motivations.

b. The Town of Rumford through its nazi code enforcement officer, Defendant Coulombe,  has shut down the RFCL's  charitable mission, deprived and has continued to deprive the RFCL of its bedrock First Amendment right to the free exercise of religion, religious, oral, and printed speech, and the right of religious assembly, -  as well as the right to freedom of religious association.

c. The Defendants town employees acting under color of law, have violated and continue to violate the RFCL's right to due process and equal protection by their rampant, unlawful and unreasonable discrimination against the RFCL, a religious organization as opposed to the beneficent treatment all other non-profit, non-religious organizations in the Town of Rumford enjoy.

## IV     Violation of 18 U.S.C., Section 1961   [The Racketeer Influenced and Corrupt Organization Act Viz., CIVIL RICO]

100.    The RFCL incorporates herein the previous allegations of fact.

a. The Defendant town employees, acting under color of law, have operated a long-standing pattern of racketeering

through the subversion of the legal entity of the Town of Rumford doing business in interstate commerce for the past eight years and counting.

b.  The pattern of predicate acts of mail and wire fraud, extortion, and obstruction of justice with intent, has been repeatedly employed, in this case, by the corrupt cabal of Defendant employees to, among other harms,  extort property tax unjustly assessed and to trigger the sale of the RFCL's Rumford property for the failure to pay un-noticed tax bills.

c. Employing Defendant Bourret's legal option twice to issue threats to foreclose on the RFCL's property for failure to pay un-noticed, un-mailed property taxes is the equivalent of extortion, particularly when both legal threats were dated and then held for almost 60 days before mailing.

d.  Twice these threats were not sent certified to the RFCL as required by law but simply via the U.S Mail and were obviously designed to dupe the RFCL, still certain that its court-ordered tax-exemption was in effect, while the Town was busy putting tax liens on the property.

e. The Town of Rumford has NEVER mailed a property tax bill to the RFCL for any year of occupancy from 2014 to 2019.

f.  By instructing Defendant Bourret to issue his legal threat to the RFCL, TWICE, without prior mailing of any tax bill directed to the RFCL through the medium of the U.S. Mails, the Town of Rumford, in  pursuance of its racketeering scheme, sought to position itself to either extort the unjust payment of property taxes by threats to sell  the RFCL'S property or to unjustly take the RFCL's property, without its knowledge and engage the charity in a costly battle to retrieve it.

g. These predicate acts by the cabal of corrupt Defendant employees of racketeering [mail fraud, extortion and obstruction of justice with intent], have been enthusiastically aided and abetted by Defendants Perry[-Esterhazy] and [Dilweed de Boisdeffre] Dilworth, III

h. This corrupt duo has been operating a separate and long-standing racketeering-by-law firm enterprise of their own and spreading the same concocted defamation against the RFCL and its officers for an un-related reason in the above footnoted and un-related case.

## V      Violations of 42 U.S.C. Section 1985 [Conspiracy to Interfere with Civil Rights,]

101.     The RFCL incorporates within the previous allegations of fact.

a. The Defendant Town of Rumford, all Defendant town employees, Defendants Perry [-Esterhazy], Laura A. Perry [-Esterhazy], [Dillweed de Boisdeffre] Dilworth, III,  and Defendants Nash and Rainey  have conspired to employ and have employed the same, vicious and false defamatory slander, frivolous prosecution, and other harmful actions in order to deny due process, equal protection of the law and to defraud the Plaintiff 501©3 charity of the means of conducting its religious and charitable mission.

b. These Defendants have conspired to defame and destroy and have defamed and  destroyed the religious character and reputation of  Plaintiff 501©3 charity and to personally discredit and defame its officers in order to compel the Plaintiff charity to abandon its religious and charitable mission in the Town of Rumford and force the Plaintiff charity to leave the state.

## Prayers for Relief

WHEREFORE, the Rumford Free Catholic Library and individual co-Plaintiffs, Stark and Tinkham, respectfully request that this Honorable Court grant the following relief:

A      Issue a temporary injunction to the Town prohibiting the tax foreclosure sale of the RFCL's Rumford property for failure to pay property tax until the appeal of the Oxford County Board of Assessment Review is transferred to this court and heard as part of this case.  [See attached application for a TRO].

B   Empanel a federal citizen Jury to hear and decide all of the issues in this First Amendment petition, viz:

  i.  Deprivation of religious use of its property.
  ii.   Deprivation of the First Amendment right to religious speech, oral and printed, and to religious assembly and association.
  iii.   Deprivation of the Fourteenth Amendment right to due process and equal protection.
  iv. The harmful predicate racketeering acts of extortion, obstruction of justice, and mail and wire fraud.
  v. The harmful, malicious and untrue defamation and slander of both the RFCL in se, and its officers individually.
  vi. The frivolous and relentless threats, prosecutions and appeals culminating in the successful attempt to tort a 501 ©(3) charity into bankruptcy

C    Permit the empaneled Jury to determine damages and punitive damages arising from the corrupt and tortious interference by the Town of Rumford with the RFCL's use of its Rumford property to further its religious and charitable mission.

D    Permit the empaneled Jury to award, if it deems it just and appropriate, a damage award in the amount of 15 million dollars to reimburse the RFCL in se, and to Father Philip M.Stark and Peter Francis Tinkham personally and individually, for:

i.  The relentless, tortious interference by the Town of Rumford with a 501[C]3's religious and charitable mission.

ii. The relentless attempt by the Town of Rumford and its Defendant employees individually and personally to tort the RFCL into bankruptcy,

iii. The obscene defamation circulated and enlarged by the Town of Rumford and by its employees individually and personally, that has permanently damaged the RFCL's reputation and that of its principle officers throughout Rumford, the 'River Valley' and far beyond.

iv. The twice-attempted extortion by the Town of Rumford of unjustly assessed property taxes by legal threats.

v.  The manifold acts by the Town of Rumford Defendant employees of mail fraud and obstruction of justice.

E    Permit the empaneled Jury to award punitive damages to punish and to permanently derail the pattern of predicate acts of racketeering by the corrupt enterprise within and subverting the Town of Rumford.

F    Permit the empaneled Jury to punish all Defendants, individually and personally, for the relentless and enthusiastic defamation of the RFCL and its officers to further their own ends.

G    Issue two final orders after the Jury has spoken:

i.   First, an order that permanently enjoins the Town of Rumford from ANY enforcement of its jurisdiction over the RFCL in a manner that discriminates in any way on the

basis of religion or creates a substantial burden on the RFCL's free exercise of religion.

ii. Second, an order that permanently enjoins the Town of Rumford from the practice of ANY phony scheme in future to foreclose on the RFCL's Rumford property when no one is looking.

H    Award to the RFCL full costs and attorneys fees arising out of past and present litigation by the Town of Rumford and such other and further relief as this Court may deem just and appropriate.

Respectfully submitted on the ___22___ Day of October in the Year of Our Lord, 2019.

The Rumford Free Catholic Library

By _____

Father Philip M. Stark, S.J., President
2130 Mendon Road, Suite 3-106,
Cumberland, RI 02864  617-365-9237

## Verification

I hereby certify that the facts asserted in this Petition are true and correct to the best of my knowledge and belief.

Aubain De Sabrevois, Clerk, for

The Rumford Free Catholic Library