UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| THE RUMFORD FREE CATHOLIC LIBRARY, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) 2:20-cv-00066-JDL ) |
| TOWN OF RUMFORD, et al., | ) ) |
| Defendants. | ) |

**ORDER**

The Rumford Free Catholic Library, along with its president, Father Philip M. Stark, and one of its founders, Peter Francis Tinkham (collectively, "Plaintiffs"), bring this action, asserting that seventeen Defendants violated state and federal law during the course of their dealings with the Library over the past several years. The Plaintiffs initiated this action in the District of Rhode Island. It was subsequently transferred to this Court by an order of United States District Judge Mary S. McElroy dated February 25, 2020.

When the case was transferred, a number of motions were pending, and the parties have filed several additional motions since. Altogether, there are twenty-two motions currently pending. In this order, I consider seven of the Plaintiffs' motions, which are primarily related to procedural matters. For the reasons explained below, I deny all seven motions. I conclude by warning the Plaintiffs that filing additional motions lacking a good-faith legal basis will result in contempt proceedings and/or restrictions on their ability to file documents in this action.

## I. DISCUSSION

Because the Plaintiffs are self-represented, I have recharacterized several motions in order to appropriately address the substance of the claims asserted in each motion and avoid unnecessary dismissal on technical grounds. *See Castro v. United States*, 540 U.S. 375, 381−82 (2003). Before turning to the substance of the Plaintiffs' motions, however, I address the threshold question of whether this Court has jurisdiction to decide them.

### A.  Jurisdiction

On June 30, 2020, the Plaintiffs filed an interlocutory appeal of my order denying their motion for a temporary restraining order. "[O]nce a notice of appeal is filed, the district court is divested of 'authority to proceed with respect to any matter touching upon, or involved in, the appeal.'" *United States v. George*, 841 F.3d 55, 71 (1st Cir. 2016) (quoting *United States v. Brooks*, 145 F.3d 446, 455 (1st Cir. 1998)). This "'general rule' . . . is designed to prevent the possibility of inconsistent simultaneous rulings" by the District Court and the Court of Appeals. *United States v. Maher*, No. 2:04-cr-00093-GZS, 2020 WL 3473637, at *2 (D. Me. June 25, 2020) (quoting *United States v. Torres-Oliveras*, 583 F.3d 37, 44 (1st Cir. 2009)). Accordingly, the filing of an interlocutory appeal restricts "only trial court proceedings that impinge directly upon the questions presented in the interlocutory appeal." *Gladu v. Correct Care Sols.*, No. 2:14-cv-00384-JAW, 2017 WL 2452289, at *1 n.1 (D. Me. June 6, 2017) (citing *Pharm. Care Mgmt. Ass'n v. Me. Attorney Gen.*, 332 F. Supp. 2d 258, 260 (D. Me. 2004)).

Assuming without deciding that the Plaintiffs' interlocutory appeal was proper under 28 U.S.C.A. § 1292(a)(1), I conclude that the filing of the appeal does not affect the Court's subject-matter jurisdiction to decide the present motions. My order denying the Plaintiffs' motion for a temporary restraining order, which the Plaintiffs have appealed, focused on the applicability of the jurisdictional bar contained in the Tax Injunction Act of 1937, 28 U.S.C.A. § 1341. By contrast, the motions I address in this Order relate to questions of venue, removal, and the pretrial conduct of the parties and counsel. Thus, the questions presented in the Plaintiffs' interlocutory appeal and those addressed in this Order are substantively unrelated, and there is little, if any, risk of inconsistent simultaneous rulings.

Even if the present motions did touch upon issues presented in the interlocutory appeal, the Court would still retain jurisdiction to decide them because the Plaintiffs' appeal is "transparently frivolous." *Global Naps, Inc. v. Verizon New Eng., Inc.*, 489 F.3d 13, 19 (1st Cir. 2007) (citing *Brooks*, 145 F.3d at 456). In a letter informing the Court of their interlocutory appeal, the Plaintiffs asserted that the Court lacked jurisdiction to consider any part of their case but did not identify any particular jurisdictional defects or provide any supporting authority or explanation. The Plaintiffs alternatively suggested that their motion for a temporary restraining order should have been granted because they had shown that they were likely to suffer "irreparable harm" and that the Defendants were not likely to suffer "demonstrable harm." ECF No. 91 at 1. In addition to misstating the standard for

granting a temporary restraining order,[1] this argument does not address the applicability of the Tax Injunction Act's jurisdictional bar, which I relied on in the order denying the Plaintiffs' motion. Indeed, the Plaintiffs admitted that they "did not bother to read [the] long list of cases referenced in support of [the] order, because [they] take the First Amendment view that so-called case law is a construct designed by judges and welcomed by attorneys . . . to abridge the Plaintiffs' right to have their grievances actually heard and redressed by a federal jury." ECF No. 91 at 2. Unsupported and baseless allegations of judicial conspiracy and bias are not legitimate grounds for appeal. Thus, based on the record before me, I conclude that the Plaintiffs' interlocutory appeal patently lacks merit and does not divest the Court of jurisdiction to decide the present motions.

### B. Plaintiffs' Motion for Transfer Back to Rhode Island

I begin with the Plaintiffs' motion to transfer venue to the District of Rhode Island, where the case was originally filed (ECF No. 62). Under 28 U.S.C.A. § 1404(a) (West 2020), a district court may transfer a civil action to another district if the plaintiff could have originally brought the action in that district.[2] *See Johnson v.*

---

[1] "To determine whether to issue a temporary restraining order, the Court applies the same four-factor analysis used to evaluate a motion for preliminary injunction." *Baber v. Dunlap*, 349 F. Supp. 3d 68, 74 (D. Me. 2018) (citing *Monga v. Nat'l Endowment for Arts*, 323 F.Supp.3d 75, 82 (D. Me. 2018)); *see also Díaz-Carrasquillo v. García-Padilla*, 750 F.3d 7, 9−10 (1st Cir. 2014). Those four factors are: "(1) the movant's likelihood of success on the merits; (2) the likelihood of the movant suffering irreparable harm; (3) the balance of equities; and (4) whether granting the injunction is in the public interest." *Shurtleff v. City of Bos.*, 928 F.3d 166, 171 (1st Cir. 2019) (citing *Díaz-Carrasquillo*, 750 F.3d at 10). "The sine qua non of this four-part inquiry is likelihood of success on the merits: if the [movants] cannot demonstrate that [they are] likely to succeed in [their] quest, the remaining factors become matters of idle curiosity." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002).

[2] A district court may also transfer a case "to any district to which all parties have consented." 28 U.S.C.A. § 1404(a). Because the motion for transfer is opposed, this provision is inapplicable.

*VCG Holding Corp.*, 767 F. Supp. 2d 208, 212 (D. Me. 2011) (citing *Hoffman v. Blaski*, 363 U.S. 335, 342–44 (1960)). Similarly, 28 U.S.C.A. § 1406(a) (West 2020) and 28 U.S.C.A. § 1631 (West 2020) permit courts to cure improper venue or lack of jurisdiction by transferring an action to another district if the plaintiff could have originally brought the action in that district. Plaintiffs may bring a civil action in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which any action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C.A. § 1391(b) (West 2020). "The burden of proving the propriety of a transfer lies with the party seeking it." *Johnson*, 767 F. Supp. 2d at 212 (citing *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000)).

For the reasons comprehensively laid out in Judge McElroy's February 25th order transferring the case to this Court, the Plaintiffs have not demonstrated that they may properly bring this action in the District of Rhode Island. This case does not involve defendants residing in Rhode Island, events that occurred in substantial part in Rhode Island, or property in Rhode Island, and the Plaintiffs have not established that any of the Defendants is subject to personal jurisdiction in the District of Rhode Island. *See* ECF No. 45 at 2–4. Instead, as Judge McElroy found, this case involves "claims against Maine residents . . . about events allegedly taking place almost exclusively in Maine and . . . [concerning] real property located in Maine." ECF No. 45 at 4. Accordingly, the Plaintiffs have failed to demonstrate a

5

basis under 28 U.S.C.A. § 1404(a), § 1406(a), or § 1631 for this case to be transferred back to the District of Rhode Island.

The Plaintiffs nevertheless assert that they are entitled to a transfer under the Petition Clause of the First Amendment to the United States Constitution, which provides that "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. The Plaintiffs contend that the Petition Clause gives them the right to litigate in the court of their choice, so long as that court has jurisdiction to hear the case.[3] This argument is without merit for two reasons.

First, it is not supported by the Petition Clause precedents of the First Circuit or the Supreme Court. "While it is true that the right of petition includes access to the courts," *Doherty v. Merck & Co.*, 892 F.3d 493, 499 (1st Cir. 2018), the right of petition under the First Amendment is not "absolute," *McDonald v. Smith*, 472 U.S. 479, 484 (1985). The Plaintiffs do not identify any caselaw suggesting that the Petition Clause contains a right of access to the court of their choice, nor do they cite to any caselaw indicating that the transfer and venue statutes cited above violate the Petition Clause. Accordingly, I conclude that the Plaintiffs are not entitled to a transfer of this case back to the District of Rhode Island under the Petition Clause of the First Amendment.

---

[3] The Plaintiffs have raised this argument before, in a motion for reconsideration of Judge McElroy's February 25th transfer order. Judge McElroy denied the motion for reconsideration, finding it "unsupported and baseless" and noting that the Plaintiffs did not attempt to "make any substantive showing" that the transfer order was based on a legal or factual error. ECF No. 68-1. Despite Judge McElroy's authoritative ruling, the Plaintiffs attempt to relitigate the issue here, raising substantively identical arguments and even attaching their earlier motion for reconsideration to the motion to transfer.

Second, even if the Petition Clause did permit the Plaintiffs to litigate in any court having jurisdiction, they still would not be entitled to a transfer. As Judge McElroy has already determined, the District Court for the District of Rhode Island does not have jurisdiction to hear this case because it lacks personal jurisdiction over all seventeen Defendants. The Plaintiffs respond that personal jurisdiction is a "red-herring" and argue that it "has never actually been of any legal force or effect." ECF No. 62 at 6. They contend that the District Court for the District of Rhode Island has jurisdiction to hear this case because it has subject-matter jurisdiction under Article III of the United States Constitution. Contrary to the Plaintiffs' argument, a court must have both subject-matter jurisdiction and personal jurisdiction in order to hear a case. *See Ins. Corp. of Ir., Ltd. v. Compagnie de Bauxites de Guinee*, 456 U.S. 694, 701 (1982). Both subject-matter jurisdiction and personal jurisdiction are constitutional requirements. *See id.* at 702; *see also Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 143 (1st Cir. 1995) (explaining that both the source and the outer limits of personal jurisdiction are "defined exclusively by the Constitution").

The Plaintiffs further argue that the case should be transferred to the District of Rhode Island because of what they characterize as judicial bias in the District of Maine. However, the alleged bias relates to other cases involving other judges, and the Plaintiffs have not suggested a basis for the undersigned judge to be recused from this case. After my own independent review of the question, I conclude that recusal is neither necessary nor appropriate.[4] *See* 28 U.S.C.A. § 455 (West 2020); *In re*

---

[4] On June 30, 2020, the Court received a letter with attachments addressed to the undersigned judge from the individual plaintiffs that includes various attachments, including a document that purports

*Martinez-Catala*, 129 F.3d 213, 220 (1st Cir. 1997). For these reasons and those stated in the order transferring the case from the District of Rhode Island to the District of Maine, the Plaintiffs' Motion for Transfer Back to Rhode Island is denied.

C. **Plaintiffs' Motion to Vacate Order on Motion for Leave to Proceed *in forma pauperis* and Motion to Evade Payment of Filing Fee**

At the commencement of this case, the Plaintiffs moved for leave to proceed *in forma pauperis*. As part of that motion, the Library submitted a form application to proceed *in forma pauperis*. Father Stark and Tinkham did not fill out individual applications. On November 4, 2019, prior to the transfer of this case, the District Court for the District of Rhode Island denied the Plaintiffs' motion. The Court ordered the Plaintiffs to pay the $400.00 filing fee if the Library remained a party to the action, as entities such as the Library are not entitled to proceed *in forma pauperis*. *See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201−02 (1993). In the alternative, the Court ordered Father Stark and Tinkham, proceeding without the Library, to either pay the $400.00 filing fee or file motions for leave to proceed *in forma pauperis*. The Plaintiffs move to vacate this order (ECF No. 10). Their motion is denied as moot because the filing fee was paid on November 13, 2019.

The Plaintiffs also move to evade payment of a filing fee for their First Amended Complaint (ECF No. 21). This motion is denied as moot because this

---

to be a petition submitted to the United States Supreme Court which names the undersigned judge as a defendant. Such a petition has not, however, been formally served, and there is no indication that it has been actually docketed with the United States Supreme Court or any other court.

Court's Local Rules do not require parties to pay filing fees for amended complaints. *See* D. Me. Local R. 3(a).

### D. Plaintiffs' Motion to Clarify and Revoke Court Order Regarding Counsel for the Library

Prior to the transfer of this case, the Library was also ordered to retain counsel because 501(c)(3) non-profit organizations such as the Library cannot represent themselves in federal court. To date, the Library has not retained counsel. Instead, the Plaintiffs have filed a Motion to Clarify and Revoke the Court Order Regarding Counsel for the Library (ECF No. 41). I construe this motion as a motion for reconsideration of the order directing the Library to retain counsel. *See Castro*, 540 U.S. at 381−82.

Motions for reconsideration are generally considered either under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, depending on the time such a motion is served. *Castro-Cruz v. Municipia de Caguas*, Civil No. 16-01756 (ADC), 2017 WL 5152175, at *2 (D.P.R. May 24, 2017) (citing *Perez-Perez v. Popular Leasing Rental, Inc.*, 993 F.3d 281, 284 (1st Cir. 1993) and *Companion Health Servs., Inc. v. Kurtz*, 675 F.3d 75, 87 (1st Cir. 2012)). Courts apply Rule 59 to motions filed within twenty-eight days of the judgment and Rule 60 to motions filed after twenty-eight days have elapsed. *See Mancini v. City of Providence*, 909 F.3d 32, 47–48 (1st Cir. 2018). The Plaintiffs filed their motion for reconsideration more than three months after the order directing the Library to retain counsel was issued. Accordingly, I apply Rule 60(b).

Rule 60(b) provides that a district court may relieve a party from a final judgment, order, or proceeding only for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Because the Plaintiffs have not made arguments that address any of the five specific grounds for relief, their only avenue for relief is Rule 60(b)(6). *See Smith v. Athenahealth Inc.*, No. 1:18-cv-00461-GZS, 2019 WL 346386, at *1 (D. Me. Jan. 28, 2019) (citing *Cotto v. United States*, 993 F.2d 274, 278 (1st Cir. 1993)). Though Rule 60(b)(6) is a "catch-all" provision, Rule 60(b)(6) motions should only be granted in "extraordinary circumstances." *Id.* (citing *Ungar v. Palestine Liberation Org.*, 599 F.3d 79, 84 (1st Cir. 2010) and *Buck v. Davis*, 137 S. Ct. 759, 772 (2017)). Further, such relief should be granted only if the movant establishes a meritorious claim or defense that "give[s] the trial court reason to believe that vacating the judgment will not be an empty exercise." *Bouret-Echevarria v. Caribbean Aviation Maint. Corp.*, 784 F.3d 37, 46 (1st Cir. 2015) (quoting *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co.*, 953 F.2d 17, 20 (1st Cir. 1992)).

The Plaintiffs have not met this burden here. It is settled law that artificial entities, including non-profit organizations such as the Library, cannot appear in federal court otherwise than through a licensed attorney. *See Rowland*, 506 U.S. at

201–03 (citing 28 U.S.C.A. § 1654 and collecting authorities). Although the Plaintiffs assert that they have attempted in good faith to retain counsel, good-faith attempts do not relieve the Library of its legal obligation to retain counsel. Because the Plaintiffs have not identified any law or facts suggesting that relief from the order is warranted, the Plaintiffs' Motion to Clarify and Revoke the Court Order Regarding Counsel for the Library is denied.

At this point, more than eight months have passed since the Library was ordered to retain counsel and warned that a failure to comply may result in the dismissal of this action. The Library has had ample notice and time to secure counsel and will not be permitted to proceed without representation any longer. Accordingly, if the Library does not have a properly licensed attorney enter an appearance on its behalf within 21 days, this action will be dismissed without prejudice as to the Library. *See* Fed. R. Civ. P. 41(b); *Cintrón-Lorenzo v. Departamento de Asuntos del Consumidor*, 312 F.3d 522, 525–26 (1st Cir. 2002).

**E.     Plaintiffs' Motion to Appoint Named Counsel**

Having reaffirmed that the Library is required to retain counsel, I turn to the Plaintiffs' Motion to Appoint Named Counsel (ECF No. 61), which requests that the Court appoint the counsel of the Plaintiffs' choice to represent them. As a preliminary matter, I note that there is no absolute constitutional right to free representation in a civil case. *See DesRosiers v. Moran*, 949 F.2d 15, 23 (1st Cir. 1991). A civil litigant is entitled to attorney appointment only if he demonstrates that "he [is] indigent and that exceptional circumstances [are] present such that a denial of counsel [is] likely to result in fundamental unfairness impinging on his due process rights." *Id.*; *see also*

11

*Ruffin v. Brann*, No. CV-09-87-B-W, 2010 WL 500827, at *1 (D. Me. Feb. 8, 2010). Additionally, a court may request an attorney to represent a person unable to afford counsel in a civil case under the *in forma pauperis* statute. *See* 28 U.S.C.A. § 1915(e)(1). However, the Plaintiffs have not demonstrated that they are indigent or unable to afford counsel, and they are not proceeding *in forma pauperis*.[5] Thus, the Plaintiffs have not established that appointing or requesting counsel to represent them is warranted. Moreover, the specific attorney that the Plaintiffs request is currently suspended from the practice of law in Maine and in this District. *See Bd. of Overseers of the Bar v. Carey*, 215 A.3d 229, 240−41 (Me. 2019); *Bd. of Overseers of the Bar v. Carey*, No. 2:18-mc-00122-NT, ECF No. 2 (D. Me. May 24, 2018); *see also* D. Me. Local R. 83.3(c). Accordingly, the Plaintiffs' Motion to Appoint Named Counsel is denied.

**F.  Plaintiffs' Motion to Order Removal and to Sanction Defendant Attorney Dale and Second Motion to Order Article III Removal**

Additionally, the Plaintiffs have filed two motions seeking to remove a civil action pending in the Maine Superior Court to this Court to be consolidated with this action (ECF Nos. 22, 42). The Plaintiffs contend that removal is "an Article III right of every citizen." ECF No. 42 at 2 (emphasis omitted). This argument mischaracterizes removal, which is "'entirely a creature of statute,' not the Constitution." *Dias v. Genesco, Inc.*, 365 F. Supp. 3d 158, 161 n.3 (D. Mass. 2019)

---

[5] As discussed above, the Plaintiffs have paid the filing fee in this action. Even if the Plaintiffs intended to proceed *in forma pauperis*, they are not currently eligible to do so. The *in forma pauperis* statute, 28 U.S.C.A. § 1915, applies only to natural persons—not to entities such as the Library—and requires persons wishing to proceed *in forma pauperis* to submit an affidavit showing that they are unable to afford court fees, which Father Stark and Tinkham have not done.

(quoting *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002)). Under 28 U.S.C.A. § 1441(a), a civil action brought in a state court may be removed to federal court only by the defendants. *See Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019). In the civil case that the Plaintiffs seek to remove from the Maine Superior Court to this Court, the Library is the plaintiff, and Father Stark and Tinkham are not parties. Because the Plaintiffs are not defendants in the civil action pending in the Maine Superior Court, they are not entitled to remove that action to this Court. Thus, the two motions seeking removal must be denied.[6]

The Plaintiffs further request that the Court sanction one of the Defendants in this case, Attorney William Dale, for actions taken in the Maine Superior Court case. This request is denied, as this Court has no jurisdiction over that proceeding. Further, the Plaintiffs' request for sanctions is groundless. The Plaintiffs assert that in the Maine Superior Court case Attorney Dale's opposition to the Library's motion to remove the case to federal court contained "trumped-up accusations against the Plaintiffs and erroneous conclusions of law." ECF No. 22 at 2. However, Attorney Dale correctly contested the Plaintiffs' motion for removal because only defendants in state court cases—not plaintiffs—may seek removal to federal court under 28 U.S.C.A. § 1441(a), as discussed above.[7]

---

[6] Even if the Plaintiffs could properly seek removal, their motions for removal would be moot. The Maine Superior Court case that is the subject of these motions was dismissed without prejudice on February 3, 2020, before the Plaintiffs filed their second motion seeking removal on February 21, 2020.

[7] In their Response in Opposition to the Plaintiffs' motions to order removal, Defendants Town of Rumford, Thomas Bourret, Linnell Geronda, Richard Coulombe, Michael Mills, and William H. Dale argue that the Plaintiffs' requests for sanctions are "themselves subject to sanctions." ECF No. 49 at 3. The Defendants' argument that self-represented litigants are subject to the requirements of Fed. R. Civ. P. 11 is well taken. However, the Defendants have not made a proper motion for sanctions

## II.  *COK* WARNING

The Court recognizes that several of the Plaintiffs' motions have been pending since before the case was transferred.  However, no waiting period justifies the Plaintiffs' numerous and repetitive filings in which the Plaintiffs merely reassert failed arguments to seek relief from earlier unfavorable decisions.  The Court cautions the Plaintiffs that, while self-represented litigants are guaranteed the right to be heard, the right to self-representation is not a license to disregard the relevant rules of procedural and substantive law.  *See Eagle Eye Fishing Corp. v. U.S. Dep't of Commerce*, 20 F.3d 503, 506 (1st Cir. 1994) (quoting *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 140 (1st Cir. 1985)).  Accordingly, the Plaintiffs are required to adhere to all applicable procedural and substantive rules of law, including Fed. R. Civ. P. 7, which sets forth the types and form of pleadings and motions allowed, and Rule 11's requirements regarding representations to the court.  *See Pronav Charter II, Inc. v. Nolan*, 206 F. Supp. 2d 46, 54 (D. Mass. 2002).

Rule 7 enumerates the types of pleadings allowed and prescribes that any request for a court order must be made by motion.  *See* Fed. R. Civ. P. 7(a), 7(b)(1).  A motion must:

> (A) be in writing unless made during a hearing or trial;
> (B) state with particularity the grounds for seeking the order; and
> (C) state the relief sought.

Fed. R. Civ. P. 7(b)(1).  Furthermore, "[t]he rules governing captions and other matters of form in pleadings apply to motions."  Fed. R. Civ. P. 7(b)(2); *see also* Fed.

---

under Rule 11.  *See* Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion . . . .").  Accordingly, I do not address this argument further.

R. Civ. P. 10. Accordingly, correspondence addressed directly to a judge requesting a court order, such as the Plaintiffs' letter to the Court dated April 23, 2020, is not a legally cognizable pleading or motion and will not be treated as one. *See, e.g., Chadbrown v. Coles*, Nos. 2:11-cv-00145-GZS and 2:11-cv-00219-GZS, 2011 WL 5299488, at *1 (D. Me. Nov. 2, 2011).

In pertinent part, Rule 11 provides that by signing, filing, submitting, or later advocating for any pleading, written motion, or other paper presented to the court, an unrepresented party certifies:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and]
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

Fed. R. Civ. P. 11(b). "Frivolous" means "[l]acking a legal basis or legal merit; manifestly insufficient as a matter of law." Black's Law Dictionary, 11th ed. (2019). Though "[t]he line between frivolous arguments and merely unpersuasive ones is fine," *N. New Eng. Tel. Operations LLC v. Local 2327, Int'l Bhd. of Elec. Workers, AFL-CIO*, 735 F.3d 15, 25 (1st Cir. 2013), the Plaintiffs have crossed that line here by filing duplicative motions and asserting arguments that have already been rejected as lacking legal basis. Such filings needlessly protract litigation, "waste judicial resources[,] and unnecessarily delay the resolution of matters within this Court's jurisdiction." *Adams v. Adams*, No. 1:17-cv-00200-GZS, 2019 WL 2814627, at *1 (D. Me. July 2, 2019).

Even assuming the Plaintiffs' subjective good-faith belief in their positions, motions for reconsideration—such as the Plaintiffs' various motions seeking to vacate, revoke, evade, and reconsider court orders—"may not be used by the losing party to repeat old arguments previously considered and rejected." *Villanueva-Mendez v. Nieves Vazquez*, 360 F. Supp. 2d 320, 323 (D.P.R. 2005) (internal quotation marks and citations omitted). Furthermore, the Court cautions the Plaintiffs that no circumstances justify their repeated, irrelevant personal attacks and accusations of incompetency aimed at judges who have previously ruled against them, attorneys who have previously represented them or lawfully opposed them, and others.[8]

In light of the number of frivolous filings by the Plaintiffs and in accordance with *Cok v. Family Court of Rhode Island*, 985 F.2d 32 (1st Cir. 1993), the Court formally places the Plaintiffs on notice that **any future knowing violations of these requirements may result in contempt proceedings or an order restricting their ability to file further motions in this court**.

### III. CONCLUSION

For the reasons stated above, it is **ORDERED** that the Plaintiffs' Motion to Order Removal and to Sanction Defendant Attorney Dale (ECF No. 22), Motion to Clarify and Revoke Court Order Regarding Counsel for the Library (ECF No. 41), Second Motion to Order Article III Removal (ECF No. 42), Motion to Appoint Named

---

[8] For example, the Plaintiffs assert that the rulings by the Magistrate Judge in a previous case were "shameful and scandalous conduct . . . just the tip of his malfeasance iceberg." Similarly, they call Judge McElroy's February 25th transfer order "irresponsible, unfair and outrageous . . . Constitutional treachery." The Plaintiffs also repeatedly resort to crude humor and name-calling, referring to Defendant Attorney Theodore Dilworth III as "Dillweed" and to Defendant Richard Coulombe as a "nazi code enforcement officer." In two separate, unnecessary asides, they take aim at the Maine Board of Overseers of the Bar, referring to it as "the aptly-acronymed MBOOB."

16

Counsel (ECF No. 61), and Motion for Transfer Back to Rhode Island (ECF No. 62) are **DENIED**.  It is further **ORDERED** that the Plaintiffs' Motion to Vacate Order on Motion for Leave to Proceed *in forma pauperis* (ECF No. 10) and Motion to Evade Payment of Filing Fee (ECF No. 21) are **DENIED as moot**.

Additionally, it is **ORDERED** that the Library have a properly licensed attorney enter an appearance on its behalf within 21 days, absent which this case will be dismissed as to the Library.

**SO ORDERED.**

**Dated:  July 13, 2020**

_____/s/ JON D. LEVY_____
**CHIEF U.S. DISTRICT JUDGE**