# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **FATHER PHILIP M. STARK, S.J.,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **2:20-cv-00066-JDL** |
| | ) | |
| **TOWN OF RUMFORD, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER ON MOTIONS TO DISMISS

Father Philip M. Stark, the president of the Rumford Free Catholic Library, and Peter Francis Tinkham, one of the Library's founders (collectively, "Plaintiffs"), bring this action, asserting that seventeen Defendants violated state and federal law during the course of their dealings with the Library over the past several years (ECF No. 9).[1]  This Order addresses four sets of motions to dismiss: one filed by the Town of Rumford, Maine ("the Town"), and its employees Thomas Bourret, Linnell Geronda, Richard Coulombe, Michael Mills, and Attorney William H. Dale ("the Town Defendants") (ECF No. 36); another filed by the Oxford County Board of Assessment Review and two Oxford County employees, Wade Rainey and Oxford County Probate Judge Jarrod Crockett (the "Oxford County Defendants") (ECF Nos. 28, 55); a third filed by Attorney Jennifer Kreckel (ECF No. 38); and a fourth filed by Hebert Realty

---

[1] The Library was originally a plaintiff in this action as well, but it was terminated as a party for failure to retain counsel on August 6, 2020.  As I have previously explained, entities such as the Library are not permitted to represent themselves in federal court.

Company (ECF Nos. 31, 81).[2]  For the reasons that follow, I find that the Plaintiffs' First Amended Complaint fails to state a claim against any of these Defendants and, accordingly, grant all four motions to dismiss.

## I.  PROCEDURAL HISTORY

The Plaintiffs initiated this action in the District of Rhode Island.  It was subsequently transferred to this Court by an order of United States District Judge Mary S. McElroy dated February 25, 2020.  When the case was transferred, a number of motions were pending, and the parties have filed several additional motions since. I have issued five orders to date.

The first order, which was issued on June 12, 2020, denied the Plaintiffs' motion for a temporary restraining order against the Town and Bourret (the Town's tax collector) because the Tax Injunction Act of 1937, 28 U.S.C.A. § 1341 (West 2020), deprived the Court of jurisdiction over the motion (ECF No. 90).[3]  The second order, which was issued on July 13, 2020, dealt with seven motions related to procedural matters such as venue, removal, and the appointment of counsel (ECF No. 96).  The third and fourth orders, which were both issued on October 30, 2020, resolved three motions and dismissed three Defendants based on insufficient service of process and lack of personal jurisdiction (ECF No. 104), and granted the Plaintiffs an extension of time to serve three other Defendants who are not addressed in this order (ECF No.

---

[2] The affidavits of two individuals associated with Hebert Realty refer to the entity as "Hebert Realty Group, LLC."  ECF Nos. 31-3 at 2, 31-4 at 2.  I refer to Hebert Realty using the name in the docket.

[3] The Plaintiffs filed an interlocutory appeal of that order, which the First Circuit dismissed for lack of prosecution in September 2020 (ECF No. 102).

105).  The fifth order, issued on November 4, 2020, dispensed with three motions related to motions addressed in these prior orders (ECF No. 106).

In this order, I address the grounds for dismissal raised by the remaining Defendants who have been properly served.

## II.  FACTUAL BACKGROUND

The following facts are derived from the Plaintiffs' First Amended Complaint (ECF No. 9), which I treat as true on a motion to dismiss.  *See Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 52-53 (1st Cir. 2013).  In April 2014, the Library acquired real property in Rumford, intending to establish a self-service food pantry, children's library, and Ignatian retreat site.  The Library is a 501(c)(3) non-profit organization and, according to the Plaintiffs, is therefore entitled to a tax exemption on the subject property.  The Library's entitlement to a tax exemption is the source of a long-running dispute between the Plaintiffs and the Town that spans five years, has been before multiple administrative bodies and courts, and is evidently the subject of another pending state court action.  A more complete history of the tax exemption and abatement dispute is set forth in my order denying the Plaintiffs' motion for a temporary restraining order (ECF No. 90).

In addition to the tax exemption issue, the Plaintiffs allege that the Town has enforced land use ordinances against the Library in an arbitrary manner.  Defendant Coulombe, the Town's Code Enforcement Officer, ordered the Library to cease and desist its charitable pantry service, its plans for a children's Catholic library, and its use of the property for religious and charitable purposes "unless and until a change-

3

of-use was established." ECF No. 9 ¶ 88.  There are five other non-profit organizations in the same residential zone as the Library, all of which are non-religious.

Additionally, the First Amended Complaint asserts that the Town and Coulombe conspired with a private realtor[4] to prevent the Plaintiffs from purchasing additional property in Rumford in furtherance of the Library's religious mission.  In particular, the First Amended Complaint alleges that the Plaintiffs were seeking to establish a community garden for the Library, but that "all inquiries to local realtors were unsuccessful" until the Plaintiffs concealed their identities by sending a proxy to view prospective properties.  ECF No. 9 ¶ 92.  It further alleges that the private realtor, when she became aware of the Plaintiffs' plans to establish a community garden on a particular stretch of agricultural land, expressed concerns that such a use "would not be permitted" by Coulombe.  *Id.* ¶ 94.  Despite these reservations, the First Amended Complaint alleges that the realtor entered into a verbal agreement with an employee of the Library to "hold the property for two weeks to give the [Library] time to produce the full amount of the selling price."  *Id.* ¶ 95.

When the Library's employee returned two weeks later to produce the full amount, the First Amended Complaint alleges that she was "quickly approached by a man" who had obviously been "camped-out" and waiting for her.  *Id.* ¶ 98.  The man allegedly informed her that he had "just closed on the property" and that it was no longer for sale.  *Id.*  Based on this turn of events and the realtor's earlier statements about Officer Coulombe, the First Amended Complaint asserts that there was

---

[4]  The realtor was initially named as a Defendant in this case.  On October 30, 2020, I dismissed the claims against her because she was not properly served with process.

"collusion" between the realtor and Defendant Coulombe "to prevent the [Library] from owning any more tax-free property" in Rumford. *Id.* ¶ 99.

Finally, the First Amended Complaint asserts that several Town employees and others have repeatedly made "slanderous" and "defamatory" statements about the Plaintiffs over the course of several years. In addition to alleging widespread, general defamation and "character assassination" by various Town employees, Oxford County employees, and others, ECF No. 9 ¶ 83(b), the First Amended Complaint specifically alleges that certain Defendants falsely stated that the Library's property was not in use, was derelict, and was unsuitable for any use during administrative and state judicial proceedings related to the Library's application for a tax exemption and request for a tax abatement. The First Amended Complaint alleges that, contrary to these assertions, there was "overwhelming evidence" that the property was in use during the relevant time period. ECF No. 9 ¶¶ 56, 63, 66, 72.

## III.  LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Rodríguez–Reyes*, 711 F.3d at 53 (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)). Courts apply a two-pronged approach in resolving a motion to dismiss. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). First, the court must identify and disregard statements in the complaint that merely offer legal conclusions couched as factual allegations. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Second, the court "must determine whether the remaining factual content allows a reasonable inference that the

5

defendant is liable for the misconduct alleged." *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (quotation marks and citation omitted).  The court accepts all well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *Rodríguez–Reyes*, 711 F.3d at 52−53.  Determining the plausibility of a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 53 (quoting *Iqbal*, 556 U.S. at 679).

Self-represented plaintiffs are not exempt from this framework, but the court must construe their complaints "liberally" and hold them "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Additionally, the court may consider other filings by self-represented plaintiffs "to understand the nature and basis of [their] claims." *Wall v. Dion*, 257 F. Supp. 2d 316, 318 (D. Me. 2003); *accord Sirois v. United States*, No. 2:17-cv-324-GZS, 2018 WL 2142980, at *1 (D. Me. May 9, 2018).

## IV.  DISCUSSION

The Plaintiffs' First Amended Complaint asserts claims for violations of: Article IV of the United States Constitution (Count One);  the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C.A. § 2000cc (West 2020) (Count Two); the First and Fourteenth Amendments, pursuant to 42 U.S.C.A. § 1983 (West 2020) (Count Three); the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. §§ 1961-1968 (West 2020) (Count Four); and 42 U.S.C.A. § 1985 (West 2020) for conspiracy to interfere with civil rights (Count Five).  Construed

liberally, the First Amended Complaint also raises a defamation claim.[5]  All of these claims arise out of several sets of factual allegations: (1) the Town's denial of the Library's request for a tax abatement, (2) the Town's allegedly arbitrary enforcement of land use ordinances against the Library and the alleged conspiracy to prevent the Plaintiffs and Library from acquiring additional property in Rumford, and (3) the Defendants' alleged slander and defamation of the Plaintiffs and the Library.  I address the claims corresponding to each set of factual allegations in turn.[6]

## A.    The Town's Denial of the Library's Application for a Tax Exemption and Request for a Tax Abatement

Counts One, Three, Four, and Five of the First Amended Complaint assert that the Town's denial of the Library's application for a property tax exemption and request for a tax abatement, and the Town's conduct in the proceedings related to the same, violated Article IV as well as the First and Fourteenth Amendments of the United States Constitution, the RICO statute, the RLUIPA, and 42 U.S.C.A. § 1985's prohibition on conspiracies to interfere with civil rights.  Previously, I denied the Plaintiffs' motion for a temporary restraining order to prevent the Town and Bourret from foreclosing on the Library's property, based largely on the Tax Injunction Act of 1937 (TIA), 28 U.S.C.A. § 1341 (ECF No. 90).  I now grant the Defendants' motions to dismiss for the same reasons.

---

[5] I exercise supplemental jurisdiction to address this state-law claim, which "derive[s] from a common nucleus of operative fact" as the Plaintiffs' federal claims.  *Pejepscot Indus. Park, Inc. v. Me. Cent. R. Co.*, 281 F. Supp. 2d 311, 312 (D. Me. 2003) (quoting *Vera-Lozano v. Int'l Broad.*, 50 F.3 67, 70 (1st Cir. 1995)); *see* 28 U.S.C.A. § 1367 (West 2020).

[6] For the most part, the Plaintiffs do not specify against which Defendant or Defendants they are making any particular claim.  Because I find that none of their claims have merit, I need not untangle that knot.

7

"The TIA deprives federal district courts of jurisdiction to enjoin the collection of state taxes." *Wal-Mart P.R., Inc. v. Zaragoza-Gomez*, 834 F.3d 110, 118 (1st Cir. 2016).  In conjunction with principles of comity, the TIA "sweeps more broadly than the letter of its text suggests" to "forbid[] not only injunctive relief, but also declaratory and monetary relief." *Cumberland Farms, Inc. v. Tax Assessor, State of Me.*, 116 F.3d 943, 945 (1st Cir. 1997); *see also Ludwin v. City of Cambridge*, 592 F.2d 606, 610 (1st Cir. 1979) ("[W]e believe a court would ordinarily find it difficult or impossible to decide whether illegal practices had occurred of such gravity as to render the local officials answerable in damages without first ascertaining the correctness of the assessment, a question which both comity and common sense indicate is for the state tribunals.").  These principles apply even when the plaintiff raises federal constitutional claims.  *See Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 421, 428 & n.8 (2010).  And although the TIA allows a federal court to exercise jurisdiction if the state courts do not provide a "plain, speedy and efficient remedy," 28 U.S.C.A. § 1341, I have already determined that "Maine's state courts provide a plain, speedy and efficient remedy" for the adjudication of the tax dispute underlying this case.  ECF No. 90 at 7.  There is nothing in the record to suggest that the circumstances underlying that decision have changed.

For these reasons and for the reasons stated more fully in my order denying the Plaintiffs' request for a temporary restraining order (ECF No. 90), I lack jurisdiction to adjudicate claims based on the Town's imposition or assessment of property tax, including the Town's alleged failure to grant the Plaintiffs an exemption based on their religious status.  I therefore dismiss those claims without prejudice.

**B.      The Town's Allegedly Arbitrary Enforcement of Land Use Ordinances Against the Library and Alleged Conspiracy to Prevent the Plaintiffs From Acquiring Additional Property**

Counts Two, Three, and Five of the First Amended Complaint, construed liberally, assert that the Town's and Defendant Coulombe's enforcement of land use ordinances against the Library, along with those Defendants' alleged collusion with a private realtor to prevent the Plaintiffs or the Library from purchasing more property in Rumford, violated the RLUIPA, the First and Fourteenth Amendments of the United States Constitution, and 42 U.S.C.A. § 1985's prohibition on conspiracies to interfere with civil rights.  These claims are premised on a selective prosecution theory: that the Town and Coulombe violated the Plaintiffs' rights by enforcing its zoning ordinance against the Library, but did not enforce the ordinance against secular organizations, and that this selective enforcement was based on religious discrimination.[7]

**1.      RLUIPA**

The Plaintiffs make several claims under the RLUIPA: a "substantial burden" claim under 42 U.S.C.A. § 2000cc(a), an "equal terms" claim under § 2000cc(b)(1), a discrimination claim under § 2000cc(b)(2), and an unreasonable limitation claim under § 2000cc(b)(3).  Many of the elements and much of the analysis of these claims overlap, but for the sake of clarity, I address each in turn.

---

[7] The Plaintiffs do not suggest that the Town's land use regulations are facially discriminatory, i.e., that they treat religious organizations differently because of their "religious character."  *Espinoza v. Mont. Dep't of Rev.*, 140 S. Ct. 2246, 2255 (2020).

### a.   Substantial Burden

The RLUIPA's "substantial burden" provision prohibits any government from "impos[ing] or implement[ing] a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution," unless imposition of the burden "is in furtherance of a compelling governmental interest" and is the "least restrictive means of furthering that compelling governmental interest."  42 U.S.C.A. § 2000cc(a).  The First Circuit has set forth several non-exhaustive factors to determine whether a land use regulation, or its application to a religious organization, is a substantial burden on religious exercise:

> 1) [W]hether the regulation at issue appears to target a religion because of hostility to that religion itself; 2) whether the regulation was imposed on the religious institution arbitrarily, capriciously, or unlawfully; and 3) whether local regulators have subjected the religious organization to a process that may appear neutral on its face but in practice is designed to reach a predetermined outcome contrary to the group's requests.

*Signs for Jesus v. Town of Pembroke*, 977 F.3d 93, 111 (1st Cir. 2020) (quotation marks and alterations omitted).  The RLUIPA is intended to protect against discriminatory land use regulation; "it is not meant to allow religious exercise to circumvent facially-neutral zoning regulations."  *Eagle Cove Camp & Conf. Ctr., Inc. v. Town of Woodboro*, 734 F.3d 673, 681 (7th Cir. 2013).

The Plaintiffs assert that Coulombe's decision to enforce the zoning ordinance against the Library was arbitrary, but the First Amended Complaint does not provide sufficient factual allegations to support this claim.  The First Amended Complaint states that, in late 2017 or early 2018, Coulombe ordered the Library "to cease and

desist . . . its use of the [property] for religious and charitable purposes unless and until a change-of-use was established." ECF No. 9 ¶ 88. However, the Plaintiffs do not identify any facts to indicate that this enforcement action was "arbitrary" or inconsistent with the governing ordinances. The mere fact that Coulombe enforced the ordinance against the Library, without more, does not support a reasonable inference that the enforcement was arbitrary, unlawful, or based on animus. And although the Plaintiffs allude to the presence of "five non-religious non-profit organizations in the same residential zone" as the Library, ECF No. 9 ¶ 111(d), they again do not state any specific facts that would demonstrate that the Town does not enforce its ordinance consistently, such as an allegation that the non-religious organizations have received exemptions from the same ordinance that was enforced against the Library. *Cf. Rubinovitz v. Rogato*, 60 F.3d 906, 910 (1st Cir. 1995) (finding that the plaintiffs had not demonstrated "disparate treatment" in the revocation of their zoning variance where the record contained no "evidence that any of their neighbors were either required to seek a variance or actually made such a request").

The Plaintiffs further allege that, when they were looking for other property on which to establish a community garden, the private realtor "object[ed] that a garden might not be permitted by [Coulombe]," and that the realtor made "several statements" that demonstrate "collusion" between Coulombe and the realtor, ECF No. 9 ¶¶ 94, 99, but they do not identify the substance of these statements or explain how they would show a disparity in enforcement. Additionally, nothing about the run-in with the unidentified man who was allegedly "camped-out" on the property

suggests a connection to Coulombe. *Id.* ¶ 98. This allegation is too vague to support the Plaintiffs' substantial burden claim.

For these reasons, the First Amended Complaint fails to state a claim under 42 U.S.C.A. § 2000cc(a) against any of the Defendants.

### b. Equal Terms

Section 2000cc(b)(1) prohibits a government from "impos[ing] or implement[ing] a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." To make out an equal terms claim, "a plaintiff must show that the challenged law—by its terms or operation—actually differentiates between religious and secular groups." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona* (*Tartikov*), 945 F.3d 83, 125 (2d Cir. 2019). A plaintiff alleging an equal terms claim must "identify a relevant secular comparator" that is "similarly situated with respect to the purpose of the underlying regulation." *Signs for Jesus*, 977 F.3d at 109.

As with the Plaintiffs' substantial burden claim, the First Amended Complaint's lack of specificity about the Town's land use ordinance, or Coulombe's allegedly arbitrary enforcement of it, forecloses the Plaintiffs' equal terms claim. The allegation that requiring the Plaintiffs to obtain a change-of-use permit placed the Library "on less than equal terms with the five non-religious non-profit organizations in the same residential zone," ECF No. 9 ¶ 111(d), is a "threadbare recital[] of the elements of a cause of action" that I must disregard, *Ocasio-Hernández*, 640 F.3d at 12 (quoting *Ashcroft*, 556 U.S. at 678) (alteration omitted). The complaint alleges no specific facts showing that the Plaintiffs' property was subject to a different or more

restrictive ordinance or enforcement scheme than any of these nonreligious comparators. Again, without more, the fact that the Town enforced its ordinance against the Library does not demonstrate a violation of the RLUIPA's equal terms provision. *See Signs for Jesus*, 977 F.3d at 109-10; *Bey v. Tampa Code Enf't*, 607 F. App'x 892, 898-99 (11th Cir. 2015) (per curiam) (finding that complaint failed to state an equal terms claim under the RLUIPA because it did not "allege with any specificity how the . . . application of [the city's] code to [the plaintiff's] property resulted in her religious assembly being treated on less than equal terms" with nonreligious organizations).

Accordingly, the First Amended Complaint does not state a claim under § 2000cc(b)(1).

### c.   **Discrimination Claim**

The RLUIPA also prohibits land use regulations that "discriminate[] against any assembly or institution on the basis of religion or religious denomination." 42 U.S.C.A. § 2000cc(b)(2). "In applying RLUIPA's nondiscrimination provision, courts have looked to equal protection precedent." *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cty.*, 915 F.3d 256, 262 (4th Cir. 2019); *see also Tartikov*, 945 F.3d at 110 n.211 ("RLUIPA's nondiscrimination provision codifies the equal protection guarantees of the Fourteenth Amendment.").

"Plaintiffs claiming an equal protection violation must first 'identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently, instances which have the capacity to demonstrate that plaintiffs were singled out for unlawful oppression.'" *Rubinovitz*, 60 F.3d at 910 (quoting

13

*Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 19 (1st Cir. 1989) (internal quotation marks and alterations omitted)).   Comparators must be alleged with "reasonable particularity," *Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 8 (1st Cir. 2001), a requirement that "must be enforced with particular rigor in the land-use context because zoning decisions 'will often, perhaps almost always, treat one landowner differently from another.'" *Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000) (Breyer, J., concurring)).   "An equal protection claimant 'may not prevail against a Rule 12(b)(6) motion simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus.'" *Barrington Cove*, 246 F.3d at 10 (quoting *Coyne v. City of Somerville*, 972 F.2d 440, 444 (1st Cir. 1992) (alterations omitted)).

Here, too, the First Amended Complaint does not state specific facts from which it could reasonably be inferred that the Plaintiffs were "singled out" for enforcement of the zoning ordinance. *Rubinovitz*, 60 F.3d at 910.   The allegation that five secular organizations are present "in the same residential zone" as the Library, ECF No. 9 ¶ 111(d), does not demonstrate that those organizations were "similarly situated" to the Plaintiffs with regard to their compliance with the Town's ordinance, *Macone v. Town of Wakefield*, 277 F.3d 1, 10 (1st Cir. 2002); *see also Freeman v. Town of Hudson*, 714 F.3d 29, 39 (1st Cir. 2013).   After all, there is an "obvious alternative explanation" for the presence of those organizations, *Iqbal*, 556 U.S. at 682 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007)): that the secular organizations complied with the ordinance.   The same is true of the realtor's statement that

Coulombe might not permit a community garden: the obvious explanation is that the realtor was correct, i.e., that the Town's ordinances might not permit a community garden on the property in question. Thus, disparate enforcement is not a plausible inference.

Because the First Amended Complaint does not allege facts sufficient to raise a plausible inference that the Plaintiffs were treated differently than other "similarly situated" landowners, *Macone*, 277 F.3d at 10, the Plaintiffs have not stated a claim under RLUIPA's nondiscrimination provision.

### d.    Total Exclusion and Unreasonable Limitation Claim

Section 2000cc(b)(3) prohibits a government from implementing a land use regulation that "totally excludes religious assemblies from a jurisdiction" or "unreasonably limits religious assemblies, institutions, or structures within a jurisdiction." These provisions "prevent[] government[s] from adopting policies that make it difficult for religious institutions to locate anywhere within the jurisdiction." *Bethel World Outreach Ministries v. Montgomery Cty. Council*, 706 F.3d 548, 560 (4th Cir. 2013). Other than the conclusory statement that the Town "interpret[ed]" its "zoning ordinance to totally exclude some religious functions and unreasonably limit others," ECF No. 9 ¶ 111(f), the First Amended Complaint does not contain any factual allegations showing that the Town's zoning ordinance excludes or restricts the use of property for religious purposes. The First Amended Complaint does not state a claim under § 2000cc(b)(3).

###### 2.    Free Exercise Claim

The Plaintiffs also allege that the Town's enforcement of its land use ordinance against them violated their right to the free exercise of religion under the First and Fourteenth Amendments.  The First Amended Complaint does not state a sufficient free exercise claim for at least two reasons.  First, the Plaintiffs have not alleged that the Town's ordinance is facially discriminatory on the basis of religion.  *See Employment Div. v. Smith*, 494 U.S. 872, 879 (1990).  Second, as I have already described, the Plaintiffs' First Amended Complaint contains insufficient factual allegations to raise a plausible claim that the ordinance, or Coulombe's or the Town's enforcement of it against the Library, "constitutes a substantial burden on [their] First Amendment right to the free exercise of religion."  *Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 101 (1st Cir. 2013); *see id.* (noting that RLUIPA's substantial burden provision is intended "to be interpreted consonantly with the Supreme Court's usage of the phrase in the First Amendment context").

For these reasons, the Plaintiffs' free exercise claim fails.

###### 3.    Due Process Claim

The First Amended Complaint, construed liberally, also alleges that the Town and Coulombe violated the Plaintiffs' procedural due process rights by enforcing the ordinance against them.  This claim, too, does not survive Rule 12(b)(6) analysis.  Due process "does not require every procedural protection . . . ; it simply requires that a private person have a basically fair opportunity to convince the decision maker, by presenting proofs and arguments and evidence and replies to the arguments of others."  *Newman v. Burgin*, 930 F.2d 955, 961 (1st Cir. 1991) (emphasis omitted).

The Plaintiffs have not alleged that they were prohibited from raising their arguments before Coulombe, a municipal board of review, or, indeed, a state court. *See Amsden v. Moran*, 904 F.2d 748, 755 (1st Cir. 1990) (noting that "the existence of state remedies," particularly "the availability of judicial review," is "highly relevant" to the due process analysis); *cf.* Me. R. Civ. P. 80B.

I find that the First Amended Complaint does not state a due process claim based on the Town's enforcement of its zoning ordinance.

### 4.    Equal Protection Claim

The Plaintiffs also claim that the Town's enforcement of its land use ordinance against them violated the Equal Protection Clause of the Fourteenth Amendment.  I have already applied an equal protection analysis to the Plaintiffs' RLUIPA nondiscrimination claim and determined that the First Amended Complaint does not adequately allege that the Plaintiffs were treated differently than other "similarly situated" landowners.  *Macone*, 277 F.3d at 10.  For the same reasons, the First Amended Complaint also fails to state an equal protection claim.

### 5.    42 U.S.C.A. § 1985

Count Five of the First Amended Complaint alleges that the Town Defendants conspired to deny due process and equal protection to the Plaintiffs, in violation of 42 U.S.C.A. § 1985(3).  As I have described, the Plaintiffs cannot bring a § 1985 claim based on the tax assessment and exemption issues; I therefore limit my analysis of this claim to the Town's enforcement of the zoning ordinance and alleged conspiracy to prevent the Plaintiffs from acquiring more property in the Town.

A claim under § 1985(3) has four elements:

> First, the plaintiff must allege a conspiracy; second, he must allege a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; third, he must identify an overt act in furtherance of the conspiracy; and finally, he must show either injury to person or property, or a deprivation of a constitutionally protected right.

*Pérez-Sánchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008).  "Pleading a section 1985(3) conspiracy 'requires at least minimum factual support of the existence of a conspiracy.'"  *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019) (quoting *Francis-Sobel v. Univ. of Me.*, 597 F.2d 15, 17 (1st Cir. 1979)).  This requires the plaintiff to state either "direct evidence of such an agreement" or "plausible factual allegations sufficient to support a reasonable inference that such an agreement was made."  *Id.* "A complaint containing only vague and conclusory allegations of a conspiracy fails to state a plausible claim under section 1985(3)."  *Id.*

The First Amended Complaint does not satisfy the threshold requirement that the plaintiffs must allege a conspiracy.   As I have described, the First Amended Complaint does not contain any factual allegations supporting the existence of a conspiracy; rather, the First Amended Complaint alludes to the existence of evidence—for instance, allegations that the Defendants made statements that "will leave the Jury in no doubt of the collusion," ECF No. 9 ¶ 99—but it never reveals the substance of that evidence.  The vehemence of its language cannot compensate for the vagueness of its allegations.

Because the First Amended Complaint does not contain factual material that is "sufficient to support a reasonable inference" of a conspiracy, *Parker*, 935 F.3d at 18, the Plaintiffs have failed to state a § 1985(3) claim.

## C.    Defamation Claims

Although the First Amended Complaint does not allege defamation in a separate count, Counts Four and Five fairly assert claims for defamation. Defamation is "a false statement published to a third party" that "harmed the plaintiff's reputation so as to lower her in the community's estimation." *Cookson v. Brewer Sch. Dep't*, 974 A.2d 276, 285 (Me. 2009).  In order to establish defamation, a plaintiff must prove that there was:

> (1) a false and defamatory statement concerning [the plaintiff];
> (2) an unprivileged publication to a third party;
> (3) fault amounting at least to negligence on the part of the publisher; and
> (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Waugh v. Genesis Healthcare LLC*, 222 A.3d 1063, 1066 (Me. 2019) (quoting *Rippett v. Bemis*, 672 A.2d 82, 86 (Me. 1996)).[8]

To the extent that the Plaintiffs' defamation claims are based on allegations of widespread, general defamation and "character assassination" by various Town employees, Oxford County employees, and others, those allegations are conclusory. A plaintiff must plead defamation in a manner "sufficiently detailed to the extent necessary to enable the defendant to respond."  *Bishop v. Costa*, 495 F. Supp. 2d 139, 141 (D. Me. 2007).  The Plaintiffs' repeated allegations that various Defendants engaged in "vicious and false defamatory slander," ECF No. 9 ¶ 114(a), and "concocted and false character assassination," ECF No. 9 ¶ 102, are too vague to enable the Defendants to respond, and thus fail to state a claim for defamation.

---

[8] The First Amended Complaint also contains allegations of slander.  Under Maine law, slander is a form of defamation.  *See, e.g.*, *Cookson*, 974 A.2d at 285.  Accordingly, the defamation analysis above applies to the Plaintiffs' assertions of both defamation and slander.

The only specific, allegedly defamatory statements described in the First Amended Complaint are (1) the Town employees' statements during administrative and judicial proceedings about the use and condition of the Library's property, and (2) Defendant Rainey's statement, which he made in his capacity as the Board of Assessment Review's chairman, that the property was "derelict" and unused, ECF No. 9 ¶ 73.

Both of these categories of statements are privileged under Maine law. Regarding the Town employees' statements, Maine recognizes an "absolute privilege" for witnesses in judicial proceedings. *Dunbar v. Greenlaw*, 128 A.2d 218, 223 (Me. 1956). And although the Maine Law Court has not expressly stated that this privilege extends to proceedings before municipal or county administrative bodies, such as the Board of Assessment Review here, this Court has found that the Law Court would apply the privilege to all "quasi-judicial" settings where decisions have the force of law, such as a zoning board of appeals. *Rohrbach v. Charbonneau*, No. Civ. 99-282-P-C, 2000 WL 760739, *7 (D. Me. Mar. 1, 2000); *accord* Restatement (Second) of Torts, §§ 585 cmt. b, 588 (Am. Law Inst. 1977). This privilege protects the Town employees' statements during the state court proceedings and the hearing at the Board of Assessment Review.

Rainey's statement is also protected. Under Maine law, "quasi-judicial decisions within the scope of [a public officer's] authority"—such as those of a licensing board, school committee, and zoning board—are absolutely privileged. *Richards v. Ellis*, 233 A.2d 37, 41 (Me. 1967); *see* Restatement (Second) of Torts § 585 cmt. b. Rainey's statement about the property, which he made in his capacity as the

chairman of the tax assessment board, was related to the tax abatement matter.  That statement was privileged.

Therefore, the First Amended Complaint fails to state a claim for defamation against any of the Defendants.

## V.  CONCLUSION

For the foregoing reasons, the Town Defendants' motion to dismiss (ECF No. 36) is **GRANTED**; the Oxford County Defendants' motions to dismiss (ECF Nos. 28, 55) are **GRANTED**; Attorney Kreckel's motion to dismiss (ECF No. 38) is **GRANTED**; and Hebert Realty's motions to dismiss (ECF Nos. 31, 81) are **GRANTED**.  In light of this disposition, the Plaintiffs' First Motion for a Preliminary Injunction (ECF No. 5) is **DENIED IN PART** as to Hebert Realty.  However, the dismissals are without prejudice as to the claims arising out of the tax exemption and abatement dispute.

Additionally, because the Plaintiffs' motion for leave to file a Second Amended Complaint (ECF No. 17) merely seeks to name additional defendants and does not make any new factual allegations that would cure the deficiencies in the First Amended Complaint, their motion for leave to file is **DENIED**.

**SO ORDERED.**

**Dated this 18th day of November, 2020**

_____/s/ JON D. LEVY_____
**CHIEF U.S. DISTRICT JUDGE**